MICHAEL, Circuit Judge,
concurring in part and concurring in the judgment:
I concur in parts I and II of the majority opinion, and I concur in the judgment because I agree that the case must be remanded for further proceedings in light of Faragher v. City of Boca Raton, — U.S. -, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), and Burlington Industries, Inc. v. Ellerth, — U.S. -, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). I cannot join in part III of the opinion because it is premature to suggest ways in which summary judgment might once again be granted to Southern, the employer. The prospects for summary judgment look doubtful to me because the new Faragher-Ellerth defense depends on facts and because Lis-sau’s allegations, if proven true, would show that she was subjected to actionable harassment. In addition, it should be made clear that the new defense is not available to the employer when a supervisor takes a tangible employment action against the employee as part of his harassment.
I.
A.
I believe that we are ill-advised to encourage the district court to consider, on sum *184 mary judgment, whether Southern has established the new Faragher-Ellerth affirmative defense. I say this because the defense is especially fact intensive. To prove the defense, Southern must show (a) that it “exercised reasonable care to prevent and correct promptly any sexually harassing behavior” and (b) that Lissau “unreasonably failed to take advantage of any preventive or corrective opportunities provided by [Southern] or to avoid harm otherwise.” Ellerth, 118 S.Ct. at 2270. Nowhere does the Supreme Court suggest summary judgment as a shortcut in dealing with this new defense. Rather, the Court recognizes the factual nature of the defense by emphasizing that it is “subject to proof by a preponderance of the evidence.” Id. Moreover, by employing terms such as “reasonable care” and “unreasonably failed,” the defense focuses on the reasonableness of conduct on the part of both the employer and the employee. When the reasonableness of conduct is in question, summary judgment is rarely appropriate because juries have “unique competence in applying the reasonable person standard” to the facts of the case. See 10A Charles Alan Wright et al., Federal Practice and Procedure § 2729, at 533 (3d ed.1998).
The majority recognizes that facts relating to the new defense must be developed on remand. Until that happens, we cannot know whether it is possible to keep this case on the summary judgment track. It is doubtful that we can, given the fact-intensive nature of the Faragher-Ellerth defense. Whatever that outcome, as of now too many facts are unknown, and the reasonableness of too much conduct is likely to be contested, for us to suggest any scenario for summary judgment under the new defense. If Far-agher and Ellerth signal anything, it is that fewer sexual harassment cases will be resolved on summary judgment.
B.
I also believe that the majority, in its discussion of the potential for summary judgment, impermissibly expands Southern’s opportunity to assert the Faragher-Ellerth defense. The majority begins by correctly acknowledging that “Faragher and Ellerth make clear that an employer may advance the defense where no discriminatory tangible employment action was taken,” ante at-. But the majority goes on to. say that “[i]f Lissau’s termination did not result from a refusal to submit to Castillero’s sexual harassment, then Southern may advance this defense.” Id. To the extent the majority is suggesting that the defense is unavailable to Southern only if Lissau’s refusal to submit triggered her firing, it is incorrect. The defense is unavailable in a broader range of circumstances. It is not available in a hostile work environment case when the supervisor takes a tangible employment action against the employee as part of the harassment. Thus, if Lissau’s termination was connected to Castillero’s sexual harassment of her, Southern may not advance the defense. See Ellerth, 118 S.Ct. 2257 at 2270 (“No affirmative defense is available ... when the supervisor’s harassment culminates in a tangible employment action”).
II.
The majority also says that “summary judgment in favor of Southern would be appropriate” if Castillero’s conduct was not severe or pervasive enough to create a hostile work environment. See ante at 183. This suggestion appears to be prompted in part by the district court’s comment (in dictum) that Castillero’s conduct “was not of an egregious nature.” Lissau v. Southern Food Serv., Inc., No. 95-487-R, slip op. at 8 (W.D.Va. Oct. 10, 1996). This dictum bears serious reexamination. If Lissau’s allegations are true, a reasonable jury could find that she was subjected to hostile work environment harassment.
Lissau alleges that Castillero’s harassment of her began with their first contacts and continued throughout her one-year tenure at Southern. Castillero’s predecessor hired Lissau and gave her some time to close cases at her old job, where she was a social worker. Shortly before she was ready to begin work at Southern, Lissau telephoned the company and was referred to the new manager, Cas-tillero. In this first conversation Castillero asked Lissau if she was married, and she replied that she was not. Castillero sched *185 uled a meeting with Lissau, which occurred within the next day or two. At that initial face-to-face meeting in July 1993, Castillero was flirtatious. He touched Lissau’s blouse, saying it was “nice silk.” Castillero then asked Lissau if she went away with men on weekends, and Lissau replied that she did not, noting that she was a single parent.
The next week Lissau went to Southern’s office to drop off some items and to tell Castillero that she was going to the beach for a day or two before beginning work. Cas-tillero made a comment about Lissau’s new hairstyle and hinted that she must be going to the beach to pick up men. Lissau replied that she was going with two of her married female friends, who were social workers.
After Lissau started work in late July 1993, Castillero would comment on her legs whenever she wore a skirt, saying, for example, “Look at those legs.” He also made frequent comments about her hair, such as, “Your hair is so pretty and black.” Lissau tried to deflect Castillero’s comments by simply saying “thank you” and moving on. As time went on, Castillero’s comments became more direct. He told Lissau that he was attracted to her and asked her whether she thought they would ever “be together.” At times Castillero intimated that they should have an affair. Lissau regularly told him that she was unavailable and that he was also (Castillero was married).
On October 31, 1993, Castillero called Lis-sau at home to get her sales report for the month, which did not meet Lissau’s personal goal. Lissau began to cry, and Castillero said, “You’re crying about your sales — that makes me want to come and hold you.” In late November 1993 Lissau and a co-worker staffed a sales booth at a home show at the Roanoke Civic Center. After the show Cas-tillero suggested that she and her co-worker go out to dinner with him. Lissau felt the dinner was a command performance because Castillero ostracized employees who would not socialize with him after work. After they left the restaurant at the end of the evening, Castillero grabbed Lissau in the middle of the street and hugged her passionately for several seconds. A few days later Castillero told Lissau that when he “felt her” that night, “he felt like he had ‘made love to [her] before.’ ”
In December 1993 Castillero learned that Lissau’s daughter was out of town for a few days, and he suggested that the two of them should go to Lissau’s house for a “wild party.” Lissau told him that she was not interested. By this time Castillero was often telling Lissau that she needed to have sex, and he even asked her when she last had sex. In March 1994 when Lissau was in a coworker’s office, Castillero walked in. Cas-tillero dropped a piece of paper near where Lissau was sitting. As he bent over to pick it up, he put his hand on Lissau’s thigh and left it there until she pushed it away. The next week Castillero went into Lissau’s office and shut the door. He moved very close to her and told her that she needed “some good sex” and that she “needed to be ‘pounded all night long.’” Lissau became sick to her stomach and cannot remember how she responded.
Castillero persisted in this conduct over the course of a year, even though Lissau repeatedly expressed her discomfort and lack of interest. Lissau became depressed by Castillero’s comments and actions, and she struggled to do her work. Finally, in June 1994 Lissau called Castillero at home and told him that she was upset with his sexual comments, that she was upset with his sexual harassment, and that she wanted assurances that he would stop the harassment and leave her alone. Castillero denied any harassment and accused Lissau of having mental problems. About a month later Castillero called Lissau into his office and fired her, saying that he understood that she was unhappy in her job.
When these facts are taken as true, as they must be for summary judgment purposes, Castillero’s conduct was severe or pervasive enough to be actionable under Title VII.